IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD MALKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18 CV 5829 |
| | ) | |
| | ) | Judge Steven Seeger |
| CLEVELAND CORPORATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Bernard Malkowski, through counsel, and for his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("MSJ"), states as follows:

**LEGAL STANDARDS**

"Summary judgment is drastic remedy..." *Long v. Village of Long Grove*, No. 82 C 6868, 1985 U.S. Dist. LEXIS 15229, at *9 (N.D. Ill. Oct. 4, 1985). It "should be allowed only when the right of the moving party is clear and free from doubt." *Mollfulleda v. Phillips*, No. 93 C 5395, 1996 U.S. Dist. LEXIS 2220, at *6 (N.D. Ill. Feb. 23, 1996). When ruling on a motion for summary judgment…the Court must "construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

In discrimination cases, a plaintiff may procced under the burden-shifting framework of *McDonnell Douglas*. 411 U.S. 792, 802 (1973). Moreover, because application of the *McDonnell Douglas* burden shifting approach has become muddled, our courts have encouraged

1

incorporating the "convincing mosaic" approach espoused in *Ortiz v. Werner Enterprises, Inc.* 834 F.3d 760, 765 (7th Cir. 2016). Under that test, the question is whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's…proscribed factor caused the discharge or other adverse employment action." *Id.*

## ARGUMENT

When the rigid and oft muddled formulaic approach of *McDonnell Douglas* is balanced with the more holistic approach of *Ortiz*, it is clear that genuine issues of material fact exist such that this Court must deny Defendant's Motion for Summary Judgment in its entirety. In support, Plaintiff incorporates by reference herein, his response to Defendant's Statement of Material Facts ("PSOF"), his Statement of Additional Material Facts, and his Appendix with Exhibits.

I. **Plaintiff has proven that the Defendant is not entitled to summary judgment as to his disability claims pursuant to the ADA and IHRA.**

    A. **Plaintiff sufficiently established that he is disabled under the Americans with Disabilities Act ("ADA").**

Plaintiff's ADA claims are based on various ailments. (See Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts ("SOF"), ¶ 77).

Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities…; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Bay v. Cassens Transport Co.*, 212 F.3d 969, 973 (7th Cir. 2000). These theories are commonly referred to as the "actual disability," "record of," and "regarded as" prongs, respectively. Plaintiff has established that he is disabled under all 3 prongs of the ADA.

        1. **Plaintiff has established that he is disabled pursuant to the "actual disability" prong.**

Plaintiff has established that he is disabled under the "actual disability" prong vis a vis his history of cancer. "[The] ADAAA very clearly provides that 'an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.'" *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976, 984 (N.D. Ind. 2010). It is well-settled that cancer is considered a disability which substantially limits the major life activity of cell growth. *Id.* at 985. Here, it is undisputed that Plaintiff had a history of cancer that the Defendant knew about. (See PSOF, ¶ 78).

Plaintiff also established that he is disabled under the "actual disability" prong vis a vis his arthritis and hip replacement surgery. "An individual is 'disabled' under the ADA if he (1) has an actual disability that substantially limits one or more major life activities…" *Feldman v. Olin Corp.*, 692 F.3d 748, 753 (7th Cir. 2012). "'Disability' is defined as (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual…" *Miller v. Illinois DOT*, 643 F.3d 190, 195 (7th Cir. 2011). The EEOC has defined "physical impairment" as "Any physiological disorder or condition…affecting one or more body systems, such as…**musculoskeletal**..." *Richardson v. Chicago Transit Authority*, 926 F.3d 881, 887 (7th Cir. 2019) (emphasis added). Increasingly, "Major life activities include 'caring for oneself…**walking**…' (citation omitted) as well as 'sitting, standing, lifting and reaching.'" *Balek v. Hobart Corp.*, No. 97 C 8130, 1999 U.S. Dist. LEXIS 12938, at *6 (N.D. Ill. Aug. 16, 1999). "A person is substantially limited…if he is unable to perform it or is significantly restricted in his performance of it." *Id.*

Here, it is undisputed that Plaintiff had arthritis that necessitated hip replacement surgery and made it very difficult for him to walk and take care of himself. (See PSOF, ¶¶ 77, 79-80). Thus, it is reasonable to infer that Plaintiff's hip condition also substantially limited his ability to

3

sit, stand, etc. Lastly, this Court should ignore Defendant's argument that Plaintiff must present medical testimony to prove his disability, because it provides no authority in support. Moreover, medical testimony is not required when, as in this case, there is objective evidence regarding the health conditions. *Martyne v. Parkside Medical Services*, Case No. 97 C 8295, 2000 U.S. Dist. LEXIS 8019, at *12-14 (N.D. Ill. June 7, 2000); see also *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 644 (7th Cir. 2010).

        **2.     Plaintiff has established he is disabled under the "record of" prong.**

A plaintiff can establish disability under the "record of" prong by showing they have a "history of" the impairment. "This would include people who have recovered from previously disabling conditions [such as cancer or coronary disease, for example]." *Davidson v. Midelfort Clinic*, 133 F.3d 499, 509 (7th Cir. 1998). In this case, Plaintiff has provided sufficient evidence to show he had a history of cancer and arthritis that required hip replacement, and that the Defendant knew about both. (See PSOF, ¶¶ 77-80). Thus, he has proven disability under the "record of" prong too.

        **3.     Plaintiff has even established he is disabled under the "regarded as" prong.**

"Under a 'regarded as' theory, the plaintiff must demonstrate that (1) the employer mistakenly believes that the employee has an impairment that substantially limits a major life activity, or (2) the employer mistakenly believes that an existing impairment, which is not actually limiting, does substantially limit a major life activity." *Brunker v. Schwan's Home Service*, 583 F.3d 1004, 1008 (7th Cir. 2009). In this case, the record shows that Plaintiff had been previously diagnosed with prostate cancer and also needed hip replacement surgery. (See PSOF, ¶¶ 77-80). Moreover, Defendant thought Plaintiff was sick too often. (See PSO, ¶ 81). Accordingly, Plaintiff has even established that he is disabled under the "regarded as" prong.

### B. Plaintiff has proven there is a genuine issue of material fact as to whether or not his disability was the but-for cause of his termination,

In its MSJ, Defendant cites to paragraphs 69, 74, and 75 (all of which are disputed) of its SOF to support its assertion that Plaintiff has not established his disability was the but-for cause of his termination. (See MSJ, p. 7). Defendant does not provide any authority in support other than citing the rule that a plaintiff must prove but-for causation in ADA cases. (*Id*.). Regardless, not only has Plaintiff satisfied his burden under the direct method (i.e. via direct and circumstantial evidence), he has also satisfied it under the indirect method—especially when the *McDonnell Douglas* analysis is balanced with the "reasonable fact finder" approach of *Ortiz*.

#### 1. Plaintiff has satisfied his burden under the direct method.

"A plaintiff…can rely on two different methods…to survive [summary judgment]…The first is the 'direct method,' in which a plaintiff must show that a genuine issue of material fact exists with respect to each of the three elements…: (1) that [he] is disabled within the meaning of the ADA; (2) that [he] is qualified to perform the essential functions of the job with or without accommodation; and (3) that [he] has suffered an adverse employment action because of his disability. *Bunn v. Khoury Enterprises*, 753 F.3d 676, 683 (7th Cir. 2014). "A qualified individual is one 'who, with or without reasonable accommodation, could perform the essential functions of the employment position.'" *Stragapede v. City of Evanston*, 865 F.3d 861, 865 (7th Cir. 2017). "In…a disparate treatment claim, the third prong…can be proved with either direct or circumstantial evidence. But direct evidence…is understandably rare in [ADA] cases." *Bunn* at 679. Thus, Plaintiffs may also rely on circumstantial evidence, such as "(1) suspicious timing; (2) ambiguous statements or behavior…; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id*.

5

As laid out *supra*, Plaintiff has proven that he is disabled within the meaning of the ADA. Increasingly, he was a qualified individual pursuant to the ADA. (See PSOF, ¶ 82). Lastly, he has presented sufficient evidence that he was terminated because of his disability. (See Plaintiff's Response to SOF ¶ 48). Plaintiff has even presented direct evidence of Defendant's animus towards him based on his disability. (See PSOF, ¶ 81). Additionally, he has presented sufficient circumstantial evidence in that Defendant terminated Plaintiff within two weeks of receiving his surgery date and within days of finding out about the complications in his lungs. (See PSOF, ¶¶ 84-87). In short, Plaintiff has proven a prima facie case under the direct method.

### 2. Plaintiff has also satisfied his burden under the indirect method.

"The second method of proof available to an ADA plaintiff…is the 'indirect method…'" First, the employee establishes a prima facie case by showing: (1) that he is disabled under the ADA; (2) that he was meeting his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably. *Bunn* at 685. "If the employee establish[es] a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id*. "Finally, if a legitimate reason is produced, the employee must prove…that the employers stated reason is a lie. *Id.* Plaintiff has raised as genuine issue of material fact as to all elements of the indirect method.

Again, as laid out *supra*, Plaintiff has established that he is disabled under the ADA. Moreover, over his twenty years at the company (indicative on its own), he met his employer's expectations. (See PSOF, ¶ 88). Also, he has sufficiently established that he suffered an adverse employment action. (See Plaintiff's Response to SOF, ¶ 48). Lastly, Plaintiff has established that similarly situated people were treated more favorably. To do so, a plaintiff must establish that

people who are not members of the protected group were treated more favorably. *Kolecyck-Yap v. MCI Worldcom, Inc*, Case Number: 99 C 8414, 2001 U.S. Dist. LEXIS 2558, at *18 (N.D. Ill. Mar. 9, 2001) (citing *DeLuca v. Winer Industries*, 53 F.3d 793, 797 (7th Cir. 1995)). "The similarly-situated analysis calls for a 'flexible, common-sense' examination of all relevant factors. (Citation omitted). 'All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination.'" *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). In this case, Plaintiff has provided evidence that the people that replaced him and/or took over his duties were outside of the protected group (i.e. not disabled). (See PSOF, ¶ 90).

Thus, the burden is on Defendant to provide a legitimate, non-discriminatory reason for terminating Plaintiff. Interestingly, Defendant does not argue lack of pretext as to Plaintiff's disability claims (see MSJ, pp. 6-8), but it does make that argument as to Plaintiff's ADEA claims (see MSJ, pp. 9-11). Thus, lack of pretext is not before the Court as to his disability claims, but in the event this Court sees otherwise and *sua sponte* extrapolates Defendants lack of pretext argument for the ADEA claims into the ADA claims, Plaintiff will address the same.

Defendant says it provided two legitimate, non-discriminatory reasons for terminating Plaintiff. (See MSJ, p. 9). The first was to cut costs. (*Id.*). The second is that Plaintiff's "consistent threats created instability." (*Id.*). "Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993). To establish pretext, an employee must prove 1) the employer's explanation had no basis in fact, 2) the explanation was not the real reason, or 3) the reason state

7

did not justify the adverse employment action (i.e. in this case, termination). *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

In the case at bar, Plaintiff has submitted ample evidence establishing Defendant's reason for termination is not credible and has no basis in fact. First, there is a genuine issue of material fact as to whether Defendant actually saved $35,000.00 per year by terminating Plaintiff. In its Answers to Interrogatories, Defendant does not say it terminated Plaintiff to cut costs. (See PSOF, ¶ 114). Defendant has not produced one document in discovery substantiating its claim that it has saved money by terminating Plaintiff. In fact, Defendant seemingly "upgraded its accounting services." (See Plaintiff's Response to SOF ¶ 27). Defendant hired outside human resources. (*Id.*). Defendant also outsourced its payroll. (*Id.*). Mike Kujawinski took over Plaintiff's duties (which took 24 hours per week at most) in addition to his own which resulted in him working fifty to sixty hours per week. (See PSOF, ¶ 91). And, Defendant's new outside accountant provided significantly more services than its former one. (See PSOF, ¶ 92). The reasonable inference to be drawn here, in Plaintiff's favor, is the Defendant may have spent more on Plaintiff's replacement(s). The cost-savings reason for termination is not credible and has no basis in fact.

Inconsistent reasons for termination are also evidence of pretext. *Starks v. George Court Co.*, 937 F.2d 311, 314 (7th Cir. 1991). In this case, Bob Kujawinski and Mike Kujawinski gave different reasons why Defendant terminated Plaintiff. (See PSOF, ¶ 93). For this reason too, Plaintiff has established pretext.

The second reason Defendant provided for Plaintiff's termination is equally unconvincing. It said the "consistent threats to retire" made it feel "vulnerable if he suddenly quit…" ( See MSJ, p. 9). That explanation is neither credible nor has any basis in fact. First,

8

Defendant testified that for the 5 or 6 years prior to his separation, Plaintiff told Defendant he was going to retire 197 times. (See Plaintiff's Response to SOF, ¶ 32). If one assumes 200 times and 5 years, Plaintiff is announcing his retirement to the company once every week or two—for five straight years. But Defendant says it only made it feel vulnerable at the end of the fifth year. That logic is not credible.

Even if Defendant relies on the few writings in the record, its testimony is not credible. Despite those writings—which Defendant never took seriously—the Plaintiff worked for years and months after sending them, and he never retired from the company. (See PSOF, ¶¶ 94-98). He was an at-will employee—if he wanted to retire, he could have left the company whenever he wanted to; alternatively, if the Defendant was supposed so "on the edge of its seat, it could have "accepted his retirement" or otherwise effected the separation whenever it wanted to. (*Id.*). In fact, to date, Plaintiff is still working. (See PSOF, ¶ 99). To argue that Defendant terminated him because it finally felt vulnerable right around the time of all of Plaintiff's health complications is pretext.

### C. Plaintiff's disability claims also survive summary judgment, because it alleges a failure to accommodate.

Defendant's MSJ glosses over the fact that Plaintiff's disability claims also allege a failure to accommodate. (See Dkt. #81-1, Complaint, ¶¶ 13, 16, 17, 50-51, 70, and 77). "In order to establish a prima facie case…, 'a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'" *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011). As laid out *supra*, Plaintiff has established the first two elements. Moreover, Plaintiff told Defendant of his health issues and requested an accommodation, but not only did the Defendant not grant him a reasonable accommodation—it didn't even engage in the

9

interactive process. (See PSOF, ¶¶ 105-107). Moreover, Defendant cannot address this issue now, because "[A]rguments raised for the first time in the reply brief are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). For this reason too, there exists a genuine issue of material fact as Plaintiff's disability claims, so this Court must deny Defendant's MSJ as to those claims.

## II. Plaintiff has proven that the Defendant is not entitled to summary judgment as to his age discrimination claims pursuant to the ADEA and IHRA.

### A. Under the "mini-RIF" analysis, Plaintiff has satisfied the prima facie case.

Defendant is correct that a "mini-RIF" analysis applies. (See MSJ, p. 9). Notably, Defendant does not dispute that Plaintiff has established the first three elements of age discrimination in a "mini-RIF" analysis. (*Id.*). But to leave no doubt, Plaintiff is in the protected class (i.e. over 40). (See PSOF, ¶ 101). He was meeting Defendant's legitimate performance expectations. (See PSOF, ¶ 88). And he suffered an adverse employment action. (See Plaintiff's Response to SOF, ¶ 48).

Defendant is also correct that that in a "mini-RIF" analysis, the fourth prong shifts to whether or not the discharged employee's duties were absorbed by people outside of the protected class. (*Id.*). Defendant says the record does not show Plaintiff's duties were taken over by people outside of the protected class. (*Id.*). It is telling that in this part of Defendant's argument, it does not cite to any part of the record to support its factual claims. (*Id.*). That's because the record is full of evidence that Plaintiff's duties were absorbed by people younger than him. The Defendant states as much in its SOF. (See SOF, ¶¶ 19, 57, 59; see also PSOF ¶ 100). The fact that Michael Wall, who is over 40, allegedly took over some of Plaintiff's duties does not defeat Plaintiff's claim either. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996).

10

Defendant says all of Plaintiff's duties must be absorbed for the mini-RIF analysis to apply. (See MSJ, p. 9). That is incorrect. In *Merrillat*—the court found the plaintiff satisfied the "mini-RIF" fourth prong where "a good deal" of the plaintiff's duties were assumed by someone outside of the protected class. 470 F.3d 685, 692 (7th Cir. 2006). Here too, Plaintiff has satisfied the fourth prong, because he has shown a good deal of his duties were absorbed by employees outside of the protected group. It follows that Plaintiff has satisfied the prima facie case for his age discrimination claims.[1]

### B. Plaintiff has established pretext.

"If the plaintiff does establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination." *Merillat* at 685. However, Defendant has failed to show there is no genuine issue of material fact as to pretext. For the reasons stated *supra*, in his disability discrimination analysis, Plaintiff has established pretext (and at the very least he has established a genuine issue of material fact as to the same).

Based on a mere excerpt of Plaintiff deposition testimony, Defendant concludes "Plaintiff adduces absolutely no evidence of pretext…" (See MSJ, p. 10). Plaintiff's cherry-picked deposition testimony is not dispositive. Moreover, as laid out *supra*, the record is full of evidence that raises a genuine issue of material fact as to whether Defendant's reason for terminating Plaintiff was pretext.

Defendant also claims the age of the decision makers in this case "strik[e] a blow to Plaintiff's case." (See MSJ, p. 11). That assertion is misplaced for a few reasons. First, it is well-settled as the movant, Defendant bears the burden of proving there is no genuine issue of material fact, so for this motion it is Defendant's "case" that is under scrutiny. Also, Defendant

---

[1] This "mini-RIF" analysis also applies to Plaintiff's disability claims, (see PSOF, ¶ 90), and serves as another basis to deny Defendant's instant motion as to Plaintiff's ADA claims.

11

cites to *Rooks* (*Id.*), but the passage cited is dicta—and dicta that cites a Second Circuit case at that. *Rooks v. Girl Scouts*, No. 95-3516, 1996 U.S. App. LEXIS 20389, at *14 (7th Cir. Aug. 9, 1996). A case from another circuit is merely persuasive authority—not controlling. *United States v. Borchert*, No. 03 CR 1199, 2004 U.S. Dist. LEXIS 27162, at *9 (N.D. Ill. Oct. 6, 2004). Furthermore, Defendant's reliance on *Haywood* and *Rooks* does not support its instant motion. Those cases merely say that if the decision-maker is in the protected class, claims of discrimination become "less plausible." *Haywood v. Lucent Technologies Inc.*, 169 F. Supp. 2d 890, 912 (N.D. Ill. 2001). By definition, that means a genuine issue of material fact still remains. In other words, Defendant's authority does nothing to establish that Defendant is entitled to summary judgment for Plaintiff's age discrimination claims.

      **C.**    **Plaintiff has established causation for his age claim.**

Defendant argues Plaintiff has not established causation because, "Plaintiff assert[s] that age [and] disability discrimination and retaliation were all contributing factors in [its] decision to terminate his employment." (See MSJ, p. 11). Again, the Defendant does not cite to the record, so the Court should ignore this argument. Moreover, Plaintiff never said such a thing. If Defendant is relying on the fact that Plaintiff's Complaint contains discrimination claims based on age and disability along with a retaliatory discharge claim (pled in the alternative), it has not provided authority in support. Defendant cites to *Onafuye*. (See MSJ, p. 12). But in that case, the district court, granted Defendant's motion for summary judgment because the plaintiff affirmatively testified, "[i] age was not the determinative factor; [ii] age, race, and national original all played a role in [the] decision, and [iii] race was the determining factor…" *Onafuye v. JP Morgan Chase NA*, No. 09 C 5100, 2012 U.S. Dist. LEXIS 14338, at *27 (N.D. Ill. Feb. 7, 2012). In the case *sub judice*, there is no such testimony from the Plaintiff in the record.

12

Moreover, a district court opinion is not binding. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

Also, as laid out above, Plaintiff has established both a *prima facie* case under the indirect method and that Defendant's reason for terminating him is pretext. Thus, he has established causation for his age claims. *Fleishman v. Continental Casualty Co.*, 698 F.3d 598, 609 (7th Cir. 2012). It follows that there exist genuine issues of material fact as to Plaintiff's age claims, so this Court should deny Defendant's motion.

**III.   Plaintiff has satisfied his burden as to his claims under the IHRA.**

Defendant claims that because Plaintiff's state law disability and age discrimination claims are based on the same evidence as their federal counterparts, the state law claims fail for the same reasons. (See MSJ, p. 12). As laid out above, Defendants arguments as to the federal law claims fail, so its arguments as to the state law claims fail too. *Teruggi v. CIT Group*, 709 F.3d 654, 659 (7th Cir. 2013).

**IV.   Plaintiff has satisfied his burden as to his retaliatory discharge claim.**

Defendant's says Plaintiff cannot establish causation for his common law retaliatory discharge claim because of the temporal gap between the relevant conduct and his termination. (See MSJ, p. 14). Defendant is incorrect in claiming that period of time was "five to 6 months." (*Id.*). The financial statements were due on or around December 15, 2016, and as of the first week of January 2017, the Defendant was still arguing with Plaintiff about them. (See PSOF, ¶ 108). In other words, the temporal gap is closer to three months.

Moreover, the case law Defendant relies on for its argument regarding the financial statements is distinguishable. Defendant relies on *Hughes*. (See MSJ, p. 14). In that case, the plaintiff claimed two letters, one sent 4 months after he filed an internal complaint and another 3

13

years later, proved his protected activity caused the adverse employment action. 967 F.2d 1168, 1171 (7th Cir. 1992). Those letters were the only discipline the plaintiff received after he filed his EEO complaint, and there is no indication their contents related to his EEO complaint. *Id.* The appellate court affirmed summary judgment in favor of the employer. *Id.* at 1175. Conversely, here, the entire time the financial statements were being finalized, and even after they were, the Defendant was upset and arguing with Plaintiff and its outside accountant about them. (See PSOF, 108). In other words, unlike in *Hughes,* the Defendant here immediately made it known that it was unhappy about the financial statements. Increasingly, not long after Russell Cannizzo completed the financial statements, the Defendant fired him because of how he drafted them. (See Plaintiff's Response to SOF, ¶ 63). It follows that there is sufficient evidence of a causal connection between the financial statements and Plaintiff's termination such that this Court must deny Defendant's motion.

      Defendant also relies on *Popadynec* to argue the temporal gap in this case is too big. (See MSJ, p. 14). Notably, Defendant does not provide a pinpoint cite, because no such statement of law exists therein. The thrust of that holding was that the plaintiff did not establish causation because the decision-maker did not know the plaintiff had filed a workers' compensation claim, and did not prove pretext. Case No. 94 C 7251, 1996 U.S. Dist. LEXIS 3529, at *10-16 (N.D. Ill. Mar. 21, 1996). In this case, it is undisputed that the owners of the company knew about Plaintiff's conduct, because they were arguing with him about it and both decided to terminate Plaintiff. (See PSOF, ¶ 109). Also, as laid out above, Plaintiff has established that there exists a genuine issue of material fact as to pretext. Thus, for Defendant, *Popadynec* is no help either.

      Lastly, Defendant relies on *Davidson*. (See MSJ, p. 14). That case also cuts against Defendant and, more importantly, highlights the fatal weakness of Defendant's temporal gap

argument. Namely, in all of the cases Defendant cites, the only viable argument those plaintiffs had was the fact that that the adverse employment action followed their conduct. What *Davidson* does is make clear that the more time that passes, the weaker the causation argument becomes. 133 F.3d 499, 511 (7th Cir. 1998). But it also says that despite any given time period, a plaintiff can still satisfy his burden with additional evidence. *Id.* In this case, Plaintiff has provided direct evidence of retaliatory animus. (See PSOF, ¶¶ 102-103 and 108-109). Furthermore, he has also provided indirect evidence of retaliatory animus in that Defendant fired Russell Cannizzo for preparing the financial statements the way he (and Plaintiff) thought was proper. (*Id.*). Thus, despite the three-month gap (which in and of itself may suffice), Plaintiff has established a genuine issue of material fact as to causation for his retaliatory discharge claim based on the financial statements.

Defendant also claims that Plaintiff's refusal to sign the I9 forms for new hires cannot serve as the basis of his retaliatory discharge claim. (See MSJ, p. 14). Defendant's argument fails. First, it says it cannot be the case because "his refusal to sign…began 4 years ago. (*Id.*). That assumes the incident is arising at a steady pace over that period of time. However, rather than relying on Plaintiff's memory—there is better evidence in the record that shows the incident only arose once in 2013, twice in 2014 and 2015, and 3 times each in 2016 and 2017—with 2 of the incidents in 2017 arising within a week of Plaintiff's separation. (See PSOF, ¶ 110). With the best evidence, and with reasonable inferences therefrom drawn in Plaintiff's favor, it no longer "strains credulity" to infer that Defendant terminated Plaintiff in April of 2017 for refusing to sign the I9s (even though the first time it happened was years prior) when the issue arose most recently weeks if not days prior to his termination. In fact, the Defendant's cite to *Wittenberg* supports Plaintiff's position. 96 C 1707, 1997 U.S. Dist. LEXIS 5602, at *25-26 (N.D. Ill. Apr.

14, 1997) (citing *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir. 1989)) (engaging in expression weeks before termination established causal link).

Defendant, relying on *Madison*, says Plaintiff's retaliatory discharge claim vis a vis his refusal to facilitate hiring undocumented workers fails because of its "reliance upon mere allegations…" (See MSJ, p. 15). That assertion is false. (See PSOF, ¶¶ 108-111). Also, *Madison* is a nonstarter. That case dealt with a plaintiff that inexplicably ignored the requirements of Rule 56 of the FRCP. 832 F.2d 965, 969 (7th Cir. 1987). It has no application here.

Defendant lastly relies on *Arres* in an attempt to prove it has carried its burden for its MSJ. (See MSJ, p. 15). It only makes this argument relative to the retaliatory discharge claim in the context of the financial statements (i.e. not the I9s). (See MSJ, p. 15). Defendant says because Plaintiff "ignored counsel's decision…" as to the financial statements, his retaliatory discharge fails. (*Id.*). Defendant's reliance on *Arres* is misplaced. In that case, a human resources representative ignored her supervisors' instructions (after the consulted counsel) and refused to process certain employees' information, so the company fired her. 333 F.3d 812, 813 (7th Cir. 2003). In other words, as to a legal matter (i.e. the propriety of its hiring practices), she ignored the penultimate authority on the subject—the company's attorneys. In *dicta*, the court said her decision to unilaterally ignore advice of counsel was insubordination. *Id*. at 814.

Unlike the *Arres* plaintiff, the Plaintiff here did not ignore the highest authority regarding the issue, because the highest authority on the issue regarding whether or not potential liabilities should have been included on the financial statements was the outside accountant. (See PSOF, ¶ 113). In fact, in the very communication that the Defendant's corporate attorney said he *thinks* the Defendant is not on the hook for liabilities, he specifically says he has no idea what an

16

accountant's ethical obligations are in reporting the same. (*Id*.). Accordingly, *Arres* does not help Defendant, and this Court should deny its MSJ as to Plaintiff's Retaliatory Discharge claim.

WHEREFORE, the Plaintiff, Bernard Malkowski, respectfully prays for an order granting the following relief:

- Denying Defendant's Motion for Summary Judgment in its entirety; or
- If deemed necessary per FRCP 56(d), allowing the Plaintiff to submit evidence it thinks is missing; and
- Whatever other relief this Court deems just and necessary.

Respectfully submitted,

/s/   Pasha Vaziri
*Counsel for Plaintiff*

Pasha Vaziri, Esq.
Vaziri Law LLC
111 W. Washington St., Ste. 1500
Chicago IL, 60602
(312)690-2610
pvaziri@vaziri.law

**CERTIFICATE OF SERVICE**

I, Pasha Vaziri, an attorney, hereby certify that on October 19, 2019, I electronically filed a copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, with attachments, using the Court's CM/ECF system thereby serving a copy of the same on all counsel of record.

/s/   Pasha Vaziri